UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MOHAMMED ISLAM, A77-318-159,

                    Petitioner,

          -v-                                                    14-CV-930-JTC

MICHAEL PHILIPS, Field Office Director for
United States Immigration and Customs Enforcement
U.S. Department of Homeland Security,

TODD TRYON, Assistant Field Office Director
Buffalo Federal Detention Facility,

ALEJANDRO MAYORKAS, Deputy Secretary,
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security,

JEH JOHNSON, Secretary U.S. Department of
Homeland Security, and

ERIC H. HOLDER, Jr., Attorney General
U.S. Department of Justice,

                    Respondents.

_____


## <u>INTRODUCTION</u>

        Petitioner Mohammed Islam, an alien under a final immigration order of removal

from the United States, has filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2241 seeking release from detention in the custody of the United States

Department of Homeland Security, Immigration and Customs Enforcement (collectively,

"DHS"), pending his removal.  *See* Item 1.  As directed by this court's order entered

December 3, 2014 (Item 2), respondent[1] has submitted an answer and return (Item 4), along with an accompanying memorandum of law (Item 5), in opposition to the petition. Despite ample opportunity to do so, petitioner (who is represented by counsel) has not filed a reply.

For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

DHS records on file with the court show that petitioner, a native and citizen of Bangladesh, entered the United States at Los Angeles, California, on October 20, 2000, upon presentation of a counterfeit alien registration number as proof of lawful permanent resident status.  *See* Item 4-2 (Exh. A, attached to Declaration of DHS Deportation Officer Juanita Payan, Item 4-1), pp. 10, 18.  He was placed in immigration removal proceedings by a Notice to Appear ("NTA") dated December 4, 2000, charging him with being subject to removal from the United States pursuant to Section 212(a)(6)(C)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(C)(i), as an alien who by fraud or willfully misrepresenting a material fact sought to procure entry into the United States, and pursuant to INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant who at the time of application for admission was not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document alien required by the INA.  Item 4-2, pp. 18-19.

---

[1]The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

On June 23, 2003, an immigration judge ("IJ") denied petitioner's applications for relief and ordered him removed from the United States to Bangladesh. *Id.* at 17. Petitioner appealed the IJ's decision, and on August 25, 2004, the Board of Immigration Appeals ("BIA") dismissed the appeal. *Id.* at 15-16. According to DHS records, petitioner was removed from the United States on May 20, 2006, pursuant to the IJ's order. *Id.* at 3.

On October 20, 2013, petitioner was encountered in the United States near Hidalgo, Texas, by United States Border Patrol officers. *Id.* at 22. After verification of his immigration status, petitioner was served with a Notice of Intent/Decision to Reinstate Prior Order (Form I-871), and he was placed in DHS custody pending removal pursuant to the IJ's reinstated order. *Id.* at 3. DHS records show that petitioner asserted fear of persecution or torture by a political party if returned to Bangladesh, and he was referred to an asylum officer with the United States Citizenship and Immigration Services ("USCIS") for a "reasonable fear determination" pursuant to the procedures set forth at 8 C.F.R. § 208.31. *See* Item 4-1, ¶ 11; Item 4-2, p. 22.

On October 30, 2013, DHS served petitioner with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that petitioner was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States. Item 4-2, pp. 13-14. The warning form advised petitioner, among other things, of penalties under INA § 243 (8 U.S.C. § 1253) for conniving or conspiring to prevent or hamper his departure from the United States, and also advised him that, pursuant to INA § 241(a)(1)(C) (8 U.S.C. § 1231(a)(1)(C)), failure to comply or provide

sufficient evidence of his inability to comply may result in the extension of the removal period and subject him to further detention.  *Id.*

In January 2014, DHS conducted a review of petitioner's custody status in accordance with immigration regulations (*see* 8 C.F.R. § 241.4), and on January 15, 2014, DHS notified petitioner that, based upon the totality of available information, it was determined that his detention would continue because he would pose a significant risk of flight if he were to be released from custody.  Item 4-2, p. 11.  Subsequent custody status reviews were conducted in April, August, and November 2014, with similar results.  *Id.* at 4-9.

On December 10, 2014, an asylum officer issued a negative finding with respect to petitioner's claim of reasonable fear of persecution in his country of nationality.  *Id.* at 23.  As indicated on the Record of Negative Reasonable Fear Finding (Form I-898), petitioner did not request IJ review of the asylum officer's determination.  *Id.*

On January 5, 2015, the DHS officer assigned to petitioner's removal case reported that a request for a travel document for petitioner had been submitted to the Consulate for Bangladesh, and was pending.  Item 4-1, ¶ 19.

Meanwhile, petitioner filed this action on November 3, 2014, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in DHS custody without a bond hearing is based upon an unlawful interpretation of the immigration laws, and violates his right to due process.  *See* Item 1.  Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

**DISCUSSION**

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).   Matters pertaining to the detention of aliens pending removal are governed by INA § 241, which authorizes detention of aliens after the issuance of a final removal order for a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i)   The date the order of removal becomes administratively final.
> (ii)   If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).   Detention during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien.").

The statute also expressly provides for the custody of aliens who, like petitioner here, have illegally reentered the United States after having already been removed:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date

and is not subject to being reopened or reviewed, the alien is not eligible and
may not apply for any relief under this chapter, and the alien shall be
removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).  Pursuant to this provision, since petitioner may not seek review of

his removal order from the date of its reinstatement, the order became administratively

final–and petitioner's 90-day detention period began–when the order was reinstated by

DHS on October 20, 2013.  *Khemlal v. Shanahan*, 2014 WL 5020596, at *3 (S.D.N.Y., Oct.

8, 2014); *Moreno-Gonzalez v. Johnson*, 2014 WL 5305470, at *3 n. 2 (S.D.Ohio, Oct. 15,

2014) (reinstated order of removal is usually final upon reinstatement because original

order is not subject to reopening or review, and alien is not otherwise permitted to seek

relief from the order);[2] *see also Lema v. Holder*, 363 F. App'x 88, 90 (2d Cir. 2010) (aliens

" 'have no constitutional right to force the government to re-adjudicate a final removal order

by unlawfully reentering the country' "); *Garcia–Villeda v. Mukasey*, 531 F.3d 141, 148, 151

n. 8 (2d Cir. 2008) ("illegal reentrants are now categorically declared ineligible for any relief

from removal" except for withholding of removal due to reasonable fear claims).   The

regulations provide further that, as an alien "not lawfully admitted" and subject to a

reinstated final order of removal, petitioner is not entitled to a bond hearing before an

immigration judge.  *See* 8 C.F.R. §§ 1236.1(c)(2) (aliens "not lawfully admitted" are not

eligible to be considered for release from custody); 241.8(a) ("An alien who illegally

---

[2]The court notes authority for the proposition that a reinstated removal order does not become
administratively final until resolution of a pending application for withholding based on reasonable fear of
persecution.  *See, e.g., Guerra v. Shanahan*, 2014 WL 7330449, at *3-5 (S.D.N.Y. Dec. 23, 2014)
(discussing federal district court cases holding that a detainee's reinstated removal order cannot be
administratively final while the detainee's withholding application is pending).  In this case, there is no
question as to the finality of petitioner's reinstated removal order, as the record before the court indicates
that petitioner's claim of reasonable fear of persecution was resolved on December 10, 2014, and
petitioner did not seek IJ review of the determination.  In any event, neither party has raised the issue of
finality on this petition, and the court therefore declines to address it.

reenters the United States after having been removed … while under an order of exclusion, deportation, or removal shall be removed from the United States by reinstating the prior order.   The alien has no right to a hearing before an immigration judge in such circumstances.").

Accordingly, petitioner's current detention is authorized under the post-final removal order custody authority set forth in INA § 241. *See* 8 C.F.R. § 241.8(f) ("Execution of the reinstated order of removal and detention of the alien shall be administered in accordance with this Part (governing Post-Hearing Detention and Removal).").   Pursuant to INA§ 241(a), petitioner's post-final removal order detention was mandatory for a ninety-day period from October 20, 2013 to January 20, 2014. *See* 8 U.S.C. § 1231(a)(1)(A), (2). Authority for detention beyond the 90-day removal period is derived from INA § 241(a)(6), which grants the Attorney General discretion to continue detention of aliens ordered removed due to inadmissibility (like petitioner here) beyond the expiration of the removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …."  8 U.S.C. § 1231(a)(6).[3]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention of certain aliens with the Fifth Amendment's prohibition against depriving a person of their liberty without due process.

---

[3]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to

cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.  Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released.  8 C.F.R. § 241.13(g)(1).  However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination.  *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

Under *Zadvydas*, the first six months of detention following a final removal order are "presumptively reasonable."  *Zadvydas*, 533 U.S. at 701.  Once the six-month period has passed, the burden shifts to the alien detainee to "provide[ ] good reason to believe that

there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Only if the alien makes this showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut" the alien's showing that there is no significant likelihood that he or she will be deported in the reasonably foreseeable future. *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights.").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*. The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to Bangladesh in the reasonably foreseeable future. He simply alleges that his detention is unlawful, and violates his right to due process. However, as discussed above, the record before the court reveals the undisputed statutory basis for petitioner's detention under INA § 241(a)(6), as an inadmissible alien subject to a reinstated final order of removal. *See* 8 U.S.C. §§ 1231(a)(6); 1182(a)(6)(C)(i), (ii); 1182(a)(7)(A)(i)(I). His custody status has been reviewed at regular intervals in accordance with the regulations, and upon each of these reviews, DHS determined to continue petitioner's detention because he posed a significant risk of flight if released.

Furthermore, DHS records reflect that upon issuance of petitioner's negative reasonable fear finding, a prompt request was made to the Consulate for Bangladesh to secure a travel document for petitioner, and there is nothing in the record before the court, beyond the pendency of the request, to indicate that authorities at the Consulate are inclined to deny it. Moreover, the available statistical evidence reveals that in recent years,

DHS has successfully repatriated significant numbers of aliens to Bangladesh, indicating no institutional barriers to petitioner's removal.  For example, DHS reports show that in fiscal year ("FY") 2010, a total of 96 aliens were repatriated to Bangladesh; in FY 2011, 88 aliens were repatriated to Bangladesh; and in FY 2013, 58 aliens were repatriated to Bangladesh. *See* DHS Yearbook of Immigration Statistics: 2012, Table 41: https://www.dhs.gov/yearbook-immigration-statistics-2012-enforcement-actions; Item 4-1, ¶ 20. These circumstances provide a reasonable basis for DHS's expectation that the verification required for the issuance of a travel document can be accomplished within the reasonably foreseeable future, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to Bangladesh.

Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish compliance with the requirements of the DHS regulations described above.  Instead, his due process claim appears to rely solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*. However, several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*. *See, e.g., Khaleque v. Department of Homeland Sec.*, 2009 WL 81318, at *4 (W.D.N.Y. Jan. 9, 2009) (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible

form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the submissions made in opposition to the petition, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future …." *Zadvydas*, 533 U.S. at 701. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## **CONCLUSION**

For the foregoing reasons, the petition is denied, and the case is dismissed.  This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable.  *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: April 23, 2015
p:\pending\2014\14-930.2241.apr22.2015